IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIS HUNTER, )<br>)<br>       Plaintiff, )<br>)<br> vs. )<br>)<br>WPD MANAGEMENT, LLC )<br>and 7130 S. JEFFREY, LLC, )<br>)<br>       Defendants. ) | Case No. 19 C 6871 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Demetris Hunter has sued WPD Management, LLC and 7130 S. Jeffrey, LLC for disability-based discrimination and retaliation under the Fair Housing Act. The defendants (collectively, WPD) have moved to dismiss Hunter's complaint for failure to state a claim upon which relief may be granted. For the reasons stated below, the Court denies defendants' motion.

### Facts

The Court takes the following facts from Hunter's complaint, the factual allegations of which the Court takes as true for purposes of the defendants' motion to dismiss. *See, e.g., Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018).

    Hunter has lived in an apartment at a multistory apartment building owned by 7130 S. Jeffrey, LLC and managed by WPD Management, LLC, for about two and one-half years. She lives in a sixth-floor apartment. She has a heart condition that results in a mobility disability, requiring her to use a walker. Consequently, she lacks the ability to

climb stairs, and she relies on the property's elevator to access her apartment.

On August 5, 2019, the building's elevator experienced a mechanical failure and ceased operating. Unable to leave her apartment, Hunter contacted WPD to find out when the elevator would be working and was told it would be fixed within the next few weeks.

Soon after this conversation, WPD posted flyers throughout the building. Hunter has attached a copy of one of them to her complaint. Compl., Ex. A. The flyer stated that management had "taken every step necessary to immediately . . . restore the elevator," including ordering the parts required to complete repairs, which would take a minimum of three weeks. *Id.* In the flyer, WPD offered to provide free help to tenants requiring "additional assistance entering or exiting the building, or assistance with carrying items up to their apartment." *Id.* The flyer listed five names and numbers for tenants to call, including that of the WPD property manager and an after-hours number.

The flyer also warned twice, in large, bolded, all-capitalized text, "DO NOT CALL 911 FOR NON-EMERGENCIES." *Id.* It stated that if WPD was notified of a tenant calling 911 or the Chicago Fire Department for a non-emergency, it would consider this to be a material violation of the tenant's lease that could result in fines and legal action, including "termination of the defaulting tenant's lease." *Id.* Hunter alleges that this warning was directed at the tenants like herself who are incapable of climbing stairs due to disability; she says that persons with such disabilities often rely on emergency services for help to enter and exit their otherwise inaccessible housing.

Hunter and an attorney with a disability advocacy organization called and wrote to WPD about the elevator, *see* Compl., Ex. B (letter dated Sept. 12, 2019), but they did

2

not receive any response. The letter from Hunter's attorney explained that due to her disability, Hunter had been unable to leave her apartment for over a month, which prevented her from getting groceries, doing laundry, or attending doctor's appointments. The letter asked WPD to cease eviction threats and repair the elevator immediately, and it asked WPD to identify and communicate the repair's completion date within a week.

The elevator was still out of service when, two weeks later, Hunter's condition required emergency care and then hospitalization. Paramedics carried Hunter down from her apartment and back up after her hospital discharge several days later. The return trip required two teams of paramedics to complete the six-floor ascent.

The elevator remained out of service and unrepaired when Hunter filed the present lawsuit on October 18, 2019, more than ten weeks after the elevator had broken down. Hunter asserts claims under the Fair Housing Act (FHA), 42 U.S.C. §3604(f)(1), for making housing unavailable based on her disability (count one); for discriminatory terms and conditions of housing, *id.* § 3604(f)(2) (count two); and for retaliation, *id.* § 3617 (count three). WPD has moved to dismiss all three claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## Discussion

In considering a motion to dismiss under Rule 12(b)(6), a court "construe[s] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive dismissal, the "complaint must allege sufficient factual matter to state a claim to relief that is plausible on its face." *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). "A claim has facial

3

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts v. City of Chicago*, 817 F.3d 561, 564–65 (7th Cir. 2016).

**1.    Count 1**

Count 1 is a claim under a provision of the FHA that that makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter." 42 U.S.C. § 3604(f)(1). Hunter contends that WPD's failure to repair the elevator, knowing of her disability and her need for the elevator, amounted to making her dwelling unavailable to her because of her disability.

In seeking dismissal of count 1, WPD argues that the unavailability of elevator service is a matter of the "habitability" of a dwelling, not its availability, and that Hunter has failed to allege facts plausibly showing that WPD acted because of her disability. WPD's focus on "habitability," which it distinguishes from "availability," does not provide a basis for dismissal of count one under Rule 12(b)(6). The distinction is derived from *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714 (D.C. Cir. 1991), but WPD puts more weight on that case that it can appropriately bear. *Clifton Terrace* involved a lawsuit by the owner of a low-income housing complex against an elevator manufacturer for refusing to service and maintain the complex's elevators. The owner asserted that the manufacturer was acting or failing to act based on the race of the complex's tenants, who were predominantly Black (at the time, the Fair Housing Act did not prohibit disability-based discrimination). The court concluded that the defendant elevator manufacturer did not have a duty under the FHA to furnish housing services in

4

a nondiscriminatory manner to the complex's tenants; that duty, the court said, resided primarily with the plaintiff, which "cannot so easily convert its statutory duty into a vicarious cause of action against third-party contractors . . . ." *Id.* at 719. In particular, the court said, the statute's relevant provisions "reach only discrimination that adversely affects the availability of housing. A lack of elevator service is a matter of habitability, not availability, and does not fall within the terms of these subsections." *Id.* (citation omitted).

The court in *Clifton Terrace* cited no authority for its "availability vs. habitability" distinction. There is a good basis to believe that whatever force that distinction might have had in the case presented to that court, the distinction may not be all that clear in at least some disability-based discrimination cases, including this one: a condition of housing that makes it uninhabitable to a disabled person may make it effectively unavailable to her. The court's distinction is also in arguable tension with cases indicating that section 3604(a) applies not only to conduct in connection with providing housing in the first instance but also to conduct occurring after the acquisition of a dwelling. *See, e.g., Bloch v. Frischholz*, 587 F.3d 771, 789-91 (7th Cir. 2009); *Ga. State Conf. of NAACP v. City of LaGrange, 940 F.3d 627,* 631-32 (11th Cir. 2019). And purely from a linguistic standpoint, a condition that makes a dwelling uninhabitable due to a person's disability arguably does make it "unavailable" to that person, which is all the statute's language requires.

As for the second point asserted by WPD, it is true that Hunter has not alleged facts that plausibly suggest that in failing to repair the elevator (or to do so promptly), WPD acted because of her disability. There is nothing in the complaint that suggests,

5

for example, that WPD was singling out Hunter or other disabled tenants based on their condition or that its inaction was in any way directed at or prompted by her or anyone's disability. But a plaintiff may make out a claim under section 3604 by showing a defendant's actions had a disparate impact on the plaintiff due to her disability, *see, e.g., Valencia v. City of Springfield*, 883 F.3d 959, 967 (7th Cir. 2018), and Hunter may be able to sustain such a claim here. Because the parties have not discussed in their briefs how a disparate impact theory might apply in the present context, the Court does not now definitively decide its applicability but rather leaves it for later determination.

WPD also argues that Hunter's claim should be dismissed because her allegation that it knew of her disability is conclusory. But aside from saying WPD knew she had a disability, it is hard to imagine what more Hunter could say in this regard that would not amount to fact pleading, which the Federal Rules do not require. *See, e.g., R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 942 (7th Cir. 2020). Indeed, Federal Rule of Civil Procedure 9(b) specifically states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). That aside, Hunter's disability would seem to be readily apparent given her use of a walker, which makes it plausible that WPD was aware of her disability.

**2.    Count 2**

Count two is a claim under section 3604(f)(2) of the FBA, which in relevant part makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2). The statute defines discrimination as including "refusal to make reasonable

accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3604(f)(3)(B).

As a preliminary matter, WPD also argues that it did not discriminate because it did not intend for the elevator to break. But Hunter's complaint involves the failure to repair the elevator, not that fact that it broke down or needed repairs. WPD also suggests that it did not know about Hunter's disability "at the time of the alleged discriminatory conduct." Defs.' Mot. to Dismiss at 2. As discussed in the previous section, however, Hunter sufficiently alleges that the WPD knew of her disability at the relevant time. That aside, Hunter also alleges that WPD was put on notice of her disability by the September 12, 2019 letter from her counsel, after which more than a month passed without repair of the elevator before Hunter filed the present lawsuit.

WPD also argues that this claim should be dismissed because Hunter never requested a reasonable accommodation, it provided a reasonable accommodation, and they didn't discriminate because it didn't treat her differently from any other tenant. On the first point, WPD contends that it cannot be said to have denied an accommodation because Hunter never asked for one, maintaining it had no knowledge of Hunter's "need for additional services since her only correspondence to the Defendants was a demand for immediate repair of the elevator." *Id.* The law, however, did not require Hunter to state in so many words that she was seeking an accommodation for a disability. Courts have considered the requirements for showing a failure to accommodate to be the same under the FHA and the Americans with Disabilities Act (ADA). *See Good Shepherd Manor Found., Inc. v. City of Momence*,

323 F.3d 557, 561 (7th Cir. 2003) (citing *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002)). *See also Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (holding that "authority under the Americans with Disabilities Act . . . is generally persuasive in assessing handicapped discrimination claims under the FHAA."). Under the ADA, the individual or her representative seeking an accommodation need not "speak any magic words before [s]he is subject to [the statute's] protections." *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994). Hunter's allegations regarding her request to repair the elevator are sufficient in this regard. And even if they were not, the September 12 letter from Hunter's counsel identifying Hunter's disability and request for the elevator to be repaired was sufficient to put WPD on notice that she was requesting an accommodation for her disability.

WPD next contends that the accommodation sought by Hunter—fixing the elevator immediately—would have been unreasonable. But whether a particular accommodation is reasonable is a question of fact, determined "by a close examination of the particular circumstances." *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996). Resolving this issue of fact in WPD's favor at this stage would run afoul of the requirement that when considering a Rule 12(b)(6) motion, a court must view the facts in the light most favorable to the plaintiff. *See, e.g., Dixon v. County of Cook*, 819 F.3d 343, 346 (7th Cir. 2016).

Next, Hunter's complaint adequately alleges the absence of an offer of a reasonable accommodation. Given the nature of her disability and the fact that she was living on the sixth floor, the allegation that WPD's offer—via the flyer—of assistance to

8

enter and exit does not amount to a reasonable accommodation is entirely plausible, at least given the length of time that the elevator remained down. The evidence ultimately may show this was a reasonable accommodation, but defendants' contention does not provide a proper basis for dismissal under Rule 12(b)(6).

Finally, WPD argues that it did not discriminate against Hunter because the conditions she cites impacted all tenants and she was not singled out. A reasonable accommodation, however, may require changing a practice or service that generally applies to everyone "as is necessary to provide that person with access to housing that is equal to that of those who are not disabled." *Good Shepherd Manor Found.*, 323 F.3d at 561. Hunter contends that the assistance offered in WPD's flyer did not provide her with an equal opportunity to use and enjoy her home and thus did not amount to a reasonable accommodation. Again, the Court cannot resolve this disputed factual matter against Hunter on a motion to dismiss for failure to state a claim.

For these reasons, the Court declines to dismiss count two.

**3.     Count 3**

In count three of the complaint, Hunter claims that WPD violated section § 3617 of the FHA, which makes it unlawful

> to coerce, intimidate, threaten, or interfere with any person in the exercise
> or enjoyment of, or on account of his having exercised or enjoyed, or on
> account of his having aided or encouraged any other person in the
> exercise or enjoyment of, any right granted or protected by
> section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Hunter alleges she exercised her rights under the FHA by asking WPD to repair the elevator so she could leave her apartment and that the threat to evict anyone who called emergency services amounted to retaliation for her exercise of her

9

statutory rights.

To prevail on a claim under section 3617, a plaintiff must show that

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate.

*Bloch*, 587 F.3d at 783. WPD contends that it did not retaliate against Hunter and that she cannot establish an intent to discriminate.

Preliminarily, WPD appears to contend that Hunter is drawing an unwarranted conclusion that the failure to repair the elevator immediately was retaliatory. That, however, is not Hunter's claim. Rather, she alleges that WPD's posting of the flyers threatening fines and eviction for those who called emergency services is what violated section 3617. Compl. ¶ 35,

Hunter's complaint satisfies the first two elements of a claim under section 3617: she alleges that she is a person with a disability and that she sought an accommodation—a functional elevator—that would enable her to freely access, and hence use and enjoy, her apartment. 42 U.S.C. § 3604(f)(3)(B). WPD does not contest the adequacy of Hunter's pleading of either of these elements.

WPD argues that it did not retaliate because it never served Hunter with an eviction notice. The statute, however, expressly proscribes threats, and a threat of eviction is sufficient to give rise to a retaliation claim. *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003).

On the question of intent to discriminate, WPD points to the flyer attached to Hunter's complaint and contends that the only reasonable inference is that it was

10

"motivated to fix and repair the elevator to better serve all tenants, not to discriminate against Hunter." Defs.' Mot. to Dismiss at 7. Hunter's attachment of the flyer to her complaint, however, does not mean that she has vouched for the accuracy of all the assertions WPD made in the flyer, let alone the inferences that WPD seeks to draw from it. In addition, in her response to the motion to dismiss, Hunter asserts that WPD made no attempt to fix the elevator before she filed suit, a plausible contention given that the elevator had not actually been repaired at the time suit was filed, more than ten weeks after it broke down. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (facts alleged in a brief in opposition to a motion to dismiss may be considered if they are consistent with the complaint's allegations). In short, the standards applicable to Rule 12(b)(6) motions do not permit the Court to accept as true WPD's version of events at this stage of the case.

In addition, the flyer states that calling 911 for what WPD deems to be a non-emergency "may result in legal action including but not limited to the termination of the tenant's lease." Compl., Ex A. Hunter contends this was a warning "directed at residents with physical disabilities" because "it is not uncommon for people with physical disabilities to call 911 to enter and exit housing, where, as in this case, it has become inaccessible to them." Pl.'s Resp. to Defs.' Mot. to Dismiss at 15. This certainly is not the only inference that might be drawn from the posting of the flyer, but it is not an implausible one. Though it may be a close call here, "the proper question to ask is still *could* these things have happened, not *did* they happen." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)) (emphasis in original). As the Supreme Court has held,

11

claims of discrimination do not need to establish a prima facie case (including intent) at the pleading stage and are not held to a higher pleading standard than what is generally required under Federal Rule of Procedure (8)(a)(2). *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002). *Swierkiewicz* remains good law post-*Iqbal*. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). At this stage of the case, Hunter's allegations are sufficient to plausibly allege retaliatory intent.

For these reasons, the Court declines to dismiss count three.

## Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss [dkt. no. 23] and directs defendants to answer the complaint by August 24, 2020.

Date: August 2, 2020

_____
MATTHEW F. KENNELLY
United States District Judge